IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEISHA LeGRANDE | : |
| v. | : CIVIL ACTION NO. 2:21-cv-00078 |
| DOWNINGTOWN AREA SCHOOL DISTRICT; DOWNINGTON AREA SCHOOL AUTHORITY; and LIONVILLE MIDDLE SCHOOL | : |

**BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS,
DOWNINGTOWN AREA SCHOOL DISTRICT,
DOWNINGTOWN AREA SCHOOL AUTHORITY AND
LIONVILLE MIDDLE SCHOOL TO DISMISS PURSUANT TO FED. R.C.P. 12(b)(6)**

**I.     FACTS**

This matter arises from Plaintiff's claim that, while working as an aide to special needs students, she was injured when one such student tripped her and caused her to fall. A copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A." At all times relevant hereto, Plaintiff was employed by Insight Workforce Solutions as an aide. Insight, in turn, contracted with Defendants to provide aides such as Ms. LeGrande when necessary for children with special or behavioral needs.

Plaintiff contends that on November 20, 2019, she was working as an aide assigned to a particular student when said student tripped her, causing her to fall to the ground. In her Complaint, Plaintiff alleges that Defendants "knew or should have known" that the student had "dangerous propensities, behavioral issues and violent tendencies," and that Defendants, violated her rights under 42 U.S.C. §1983 and the 14th Amendment to the Constitution. *See* Exhibit "A." Plaintiff contends that this minor student who allegedly tripped her had a "long history of being violent

toward students, teachers, aides and others in the school," and that Defendants should have warned her about the student's allegedly violent tendencies. *See* Exhibit "A."

Plaintiff additionally contends that the Defendants were "recklessly indifferent" to the danger caused by this student and "knowingly created a dangerous environment" through which Plaintiff was injured. Plaintiff also contends, without any basis or specificity, that Defendants "allowed unlawful and unconstitutional regulations, rules, directive, edicts and/or procedures to exist," though Plaintiff fails to specify any such rule, regulation, directive, edict or procedure and fails to identify how such was "unconstitutional."

For the reasons that follow, Plaintiff has failed to plead any fact which, even if true, would support a prima facie claim in this Court, and therefore her Complaint should be dismissed.

## II.  QUESTION TO BE DETERMINED

Should this Honorable Court dismiss with prejudice all claims against a school district and school arising under 42 U.S.C. §1983 and the 14th Amendment because Plaintiff failed to plead averments which support a prima facie claim?

**Suggested Answer: Yes.**

## III.  ARGUMENT

### A.  Legal Standard

The purpose of a Motion filed under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a Complaint. *See* Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A court should grant a 12(b)(6) Motion only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim which would entitle him to relief." Jones v. Select Portfolio Servicing, Inc., 2008 WL 1820935 (E.D. Pa. 2008), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 90 (1957). When ruling on a Motion to

Dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Conservit, Inc. v. Deimler's Recycling, Inc., 2014 WL 4792245 (M.D Pa. 2014), *citing* Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

As cogently explained by the United States District Court for the Middle District of Pennsylvania:

> To test the sufficiency of the complaint, the court must conduct a three step inquiry. In the first step, the court must take note of the elements a plaintiff must plead to state a claim. Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a plausible claim for relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. When the complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint.
>
> Id. (Internal citations omitted).

**B.      Plaintiff Fails to Plead a Claim Under Which Relief May Be Granted Under 42 U.S.C. §1983**

Plaintiff's Complaint consists of a single count, in which the heading identifies unspecified claims under 42 U.S.C. §1983, and the 14th Amendments to the Constitution. In reading the allegations, it appears that Plaintiff contends that Defendants are liable under a "state created danger" theory under 42 U.S.C. §1983. Specifically, Plaintiff contends that Defendants knew or should have known that the minor student had violent tendencies and failed to warn Plaintiff, an aide specifically assigned to children with behavioral issues, of such alleged tendencies. Plaintiff also appears to contend that Defendants either lacked policies, procedures and training pertaining

to safety measures as to students with behavioral issues, or alternatively had such policies but they were unconstitutional. *See* Exhibit "A." None of Plaintiff's averments, as pled, set forth a prima facie claim under §1983.

42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." "In general, §1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right." S.K. v. North Allegheny School District, 168 F. Supp. 3d 786, 807 (W.D. Pa. 2016), *citing* Groman v. Township of Manalapan, 47 F. 3d 628, 633 (3d. Cir. 1995). In order to assert a cause of action under §1983, a plaintiff must prove first, a violation of a right, privilege or immunity secured by the Constitution and laws of the United States, and second, that the violation was committed by a person acting under the color of state law. Id.

With respect to the first element of proof, "the first step is to identify the exact contours of the underlying right said to have been violated." Id., *citing* County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998). The Third Circuit Court of Appeals has recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 225 (3d Cir. 2008). However, as noted by the Middle District of Pennsylvania noted that "[g]enerally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." Bridges ex rel. D.B. v. Scranton School Dist., 66 F.Supp.3d 570, 580 (M.D. Pa. 2014), *citing* Sanford v. Stiles, 456 F.3d 298, 303-04 (3d. Cir. 2006). As this Honorable Court has recognized, "it is well established that

4

the Due Process Clause does not impose an affirmative obligation on a municipality to protect its citizens from private acts of violence." Dubrow v. City of Philadelphia, p. 4 (E.D. Pa. 2008) 2008 WL 4055844. As held further by this Court:

> In DeShaney, the United States Supreme Court stated that the Due Process Clause of the Fourteenth Amendment is a "limitation on the state's power to act, not …a guarantee of certain minimal levels of safety and security." 489 U.S. at 195. The intended purpose of the Due Process clause is to prevent the government from abusing its power over private citizens; its purpose is not to ensure that the state protects private citizens from one another. Id. At 196 ("[The Due Process Clause's] purpose was to protect the people from the State, not to ensure that the State protected them from each other."). I note that both the Supreme Court and the Third Circuit have repeatedly cautioned federal courts to exercise utmost restraint when asked to recognize individual rights under the Due Process Clause that extend beyond its intended purpose. See e.g. DeShaney, 489 U.S. at 195; Collins, 503 U.S. at 125; Bennett v. City of Philadelphia, 499 F.3d 281, 287, 289-90 (3d Cir. 2007); Kaucher v. County of Bucks, 455 F.3d 418, 428 n. 5 (3d Cir. 2006).
>
> It is also well established that the Due Process clause does not impose an affirmative obligation on municipal employers to provide a safe working environment for municipal employees. In Collins v. City of Harker Heights, the Supreme Court explained that state law, rather than the federal Constitution, generally governs employment relationships, and failures on the part of government employers to provide a working environment "free of unreasonable risks of harm" is government by state tort law, not the Due Process Clause. The Supreme Court has also explained that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of care arising out of tort low. Remedies for the latter type of injury must be sought in state court under traditional tort-law principles." See Baker v. McCollan, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Hence, conduct by a municipal employer that is merely negligent may be actionable in a state forum, but it cannot form the basis of an award of damages under 42 U.S.C. §1983. See Baker, 443 U.S. at 138-47.

Id. at 4-5.

Two exceptions to this rule have been recognized: where a "special relationship" exists, or when a "state created danger" is involved. Though Plaintiff fails to actually plead that either

exception exists, Plaintiff's allegations most closely resemble a claim that a "state created danger" resulted in her injury. The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating a danger to an individual in certain circumstances." Morrow v. Balaski, 719 F.3d 160, 176 (3d. Cir. 2013). To prevail on a theory of state-created danger, Plaintiff must prove: 1) the harm ultimate caused was foreseeable and fairly direct; 2) a state actor acted with a degree of culpability that shocks the conscience; 3) a relationship between the [district] and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subject to the potential harm brought about by the state's action as opposed to the public in general; and 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Id. at 177.

The first element of a state created danger claim is that the harm that was ultimately caused was a foreseeable and direct result of the state's actions. In this case, Plaintiff contends that being tripped by this particular student was "foreseeable" because this student had "violent tendencies" about which she was not warned. Essentially, Plaintiff contends that because this particular student had acted out in the past in unspecified circumstances, it was foreseeable that this student would trip her and cause her to fall.

Plaintiff's averments that it was foreseeable that this student would trip Plaintiff and cause her to fall are nothing more that conclusory statements, that at most, support a claim for negligence. However, such allegations do not rise to a level to suggest that it was foreseeable that a Constitutional right of the Plaintiff, an adult aide assigned to work with special needs children, would be violated by being tripped by the Plaintiff.

The second factor necessary to establish a state created danger theory is that the state actor, in this case, the School District and Middle School, must have acted in such a manner which "shocks the conscience." As noted by the United States District Court for the Middle District of Pennsylvania, in order for conduct to "shock the conscience" in a public school setting, the conduct must be performed with "malice or sadism." *See* K.A. ex. Rel. J.A. v. Abington Heights School Dist., 28 F.Supp.3d 356, 373 (M.D. Pa. 2014). As explained by the Supreme Court of the United States, the "constitutional concept of conscience shocking duplicates no traditional category of common law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).

In this case, the allegations of Plaintiff are only that Defendants allegedly failed to warn her that the particular student to which she was assigned had allegedly acted out violently in the past. There is nothing averred to suggest that Defendants knowingly and intentionally with malice placed the Plaintiff, an aide whose job it was to work with special needs students, in a position that they knew she would be injured. Though Plaintiff added language in her Amended Complaint to aver that the actions of the Defendants "shocked the conscience," this addition amounts to nothing more than conclusory language.

In DuBrow, this Honorable Court held that decisions pertaining to safety measures which led to a female employee being sexually assaulted by a male inmate did not rise to the level of deliberate indifference that would support a claim under §1983. This Court noted that in order to find that certain safety decisions amounted to deliberate indifference, it must find that "Defendants consciously disregarded a great risk of serious harm rather than a substantial risk." Id. This Court refused to do so, holding instead that, though certainly the defendant could have made decisions

to make the workplace safer and potentially prevent the sexual assault, at most, the conduct amounted to negligence, which cannot rise to the level of a constitutional violation. Id.

This Court's finding in DuBrow is instructive. While there may have been some risk that the particular student to which Plaintiff was assigned or, to that end, any of the special needs students requiring one-on-one aide support could act out in some manner causing injury, at most the failure to warn Plaintiff that a particular special needs student had acted out in the past was negligent, but not deliberately or recklessly indifferent. Indeed, it is not a situation wherein dangerous and deadly weapons are involved, or even a situation pertaining to adults with violent dispositions as in DuBrow; to the contrary, the situation at hand involved a minor, middle school special needs student. It is therefore submitted Plaintiff cannot satisfy the second prong of the state created danger requirements.

The third prong requires that the plaintiff be a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjects to the potential harm as opposed to a member of the public in general. In that Plaintiff was an aide assigned specifically to assist this particular student, Defendants concede that this particular prong only would be satisfied.

The fourth and final requirement of a state created danger theory requires that the state actor affirmatively used his or her authority in a way that created a danger to the citizen that rendered the citizen more vulnerable to danger than had the state not acted at all. Plaintiff cannot, and in fact does not allege, any affirmative action by Defendants that created any such danger.

In D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992), the Third Circuit held that plaintiffs failed to assert facts that would support a theory of state created danger, as plaintiffs failed to assert any facts to support any affirmative action on the part of the school created any danger to the plaintiffs. In D.R., two minor female students

alleged that, while students in a graphic arts class at Middle Bucks, they were physically, verbally and sexually assaulted by several male students. Plaintiffs alleged that the school was liable for not providing supervision for the teacher in the classroom at the time. The Third Circuit held "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." Id. at 1374. The Third Circuit concluded that it was convinced that the school defendant neither caused the peril of the plaintiffs, nor did it increase their risks of harm or act to render them more vulnerable to the assaults of the other students.

In Lansberry v. Altoona Area School District, 318 F.Supp.3d 739 (W.D. Pa. 2018), the United States District Court for the Western District of Pennsylvania reached a similar result. In Lansberry, the father of a student who committed suicide as a result of being bullied brought an action against the school district alleging, among other claims, that the district was liable under a theory of state created danger. Plaintiff claimed that the minor student was bullied in the presence of the high school staff as well as other students, and that though it was well known that he was being bullied, the school did not take any disciplinary measures against the bullies.

In dismissing the claim that the district was liable under a state created danger, the court noted that plaintiff had failed to plead any affirmative action on the part of the school district that harmed the plaintiff or made him more vulnerable to the bullying. The court noted that the "affirmative act requirement 'ensures that defendants are only liable for misuse of state authority, rather than a failure to use it.'" Id. at 755, citing Gayemen v. Sch. Dist. of City of Allentown, 712 F. App'x 218 (3d Cir. 2017).

The only affirmative act alleged is that Plaintiff contends Defendants "assigned her" to this particular student. In that the nature of Plaintiff's employment was an aide working with special

9

needs students, assignment to work with a student cannot in and of itself constitute an affirmative action on the part of Defendants that would rise to the level of "creating" a danger to Plaintiff. Therefore, it is submitted that Plaintiff has failed to plead any facts which would support a finding under the fourth prong of the state created danger requirements.

Again, in her Amended Complaint, Plaintiff has added language amounting to nothing more than legal conclusions to support her claims; however, there are no new or additional facts pled which would support any of Plaintiff's claims in this matter. As held by the Third Circuit Court of Appeals:

> A court confronted with a Rule 12(b)(6) motion must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the nonmovant. *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008). **Legal conclusions receive no such deference, and the court is "not bound to accept as true a legal conclusions couched as a factual allegation.**" Twombly, 550 U.S. at 555, 127 S. Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 186, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950; *Wilkerson*, 522 F.3d at 312-22.

Guirgus v. Movers Specialty Services, Inc. 346 Fed. Appx. 774, 776 (3d. Cir. 2009) (Emphasis added).

At most, the factual averments pertaining to Plaintiffs claims in this matter support an alleged "failure to warn." Such a claim may support a finding of negligence; however, there is no basis for a finding of a constitutional violation that would in any manner support Plaintiff's claims under 42 U.S.C. §1983. As such, at most Plaintiff has pled facts that would support claims that would be appropriate in state court, not before this Honorable Court.

Plaintiff also appears to make a claim under a theory of municipal liability, citing to unidentified and unspecified polices, regulations, procedures and/or training that Plaintiff contends were "unconstitutional."

Municipalities can be liable under §1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), citing Gallashaw v. City of Philadelphia, 774 F. Supp. 2d (E.D. Pa. 2011).

To prove municipal liability under Monell for a §1983 violation, a plaintiff must establish: "(1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." Id. To prevail on such a claim, Plaintiffs must demonstrate that the violation of rights was caused by a policy, custom, or practice of the municipality. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). A *policy* exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007). A *custom* may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. at 155-56. In determining who has policymaking authority, the court should look to state law in order to "determine which official has final, unreviewable discretion to make a decision or take an action." Id. at 156. Alternatively, "an employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision." Kelly v. Borough of

11

Carlisle, 622 F.3d 248, 264 (3d Cir. 2010). Only municipal officials with final policymaking authority can subject a governmental entity to liability under §1983.

The Middle District of Pennsylvania outlined the requirements for a §1983 claim under as follows:

> Under the law of this Circuit, a governmental entity is liable for its employees' conduct when their acts are deemed to be the result of a policy or custom of the governmental entity for whom the employee works. A governmental agency is generally accountable for an employees' acts when: (1) an appropriate office or entity promulgates a statement of policy and the employees' act is an implementation of that policy; (2) the act of the policymaker violates federal law; and (3) a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government.

M.S. ex rel. Hall v. Susquehanna Township School Dist., 43 F. Supp.3d 412, 420 (2014).

In Hill v. City of Philadelphia, 2017 WL 3263786 *2 (E.D. Pa.), the plaintiff claimed that the City of Philadelphia, via its police department, was deliberately indifferent to incidences of false imprisonment, excessive force, and improper interrogation technique, and that it maintained a policy and custom that violated the plaintiff's constitutional rights.[1] Hill, at *2. The Hill plaintiff also alleged that the City failed to properly train, supervise, and sanction its officers, and must be held liable for the ensuing constitutional violations. Id. The City moved to dismiss first because the plaintiff's Complaint failed to specify a municipal custom or policy that could serve as the basis of liability, and second because no official policymaker to whom the alleged wrongful custom or policy could be linked was identified. Id.

The Hill Court found that the plaintiff had failed to establish a policy or custom as the cause of the constitutional violations he had experienced. The Court held that plaintiff had failed to satisfy the pleadings requirements of Monell because he identified neither a municipal policy nor

---

[1] The plaintiff in Hill alleged he was choked, slammed on a table, and called a racial slur during interrogation while in police custody.

a custom. The Court stated: "It is insufficient for a plaintiff to merely state the 'phraseology' of an alleged policy or custom if the allegations are unsupported by supporting facts." Hill, at *2. Citing examples of factual allegations of specific reference to policy or custom that were found to satisfy the Monell pleading standard, and noting that plaintiff had alleged no such facts, the Hill Court found no support for the plaintiff's claim that the City had failed to supervise or train its employees: "Plaintiff fails to allege any facts that provide support for the claim that a municipal policy or custom exists, much less that an official custom or policy caused the harm alleged here." Hill, at *3. The Court continued: "Even if Plaintiff sufficiently pleaded the existence of a municipal policy or custom that would support the imposition of municipal liability, Plaintiff's claim . . . necessarily fails because Plaintiff does not identify or allege a municipal policymaker or decisionmaker who was aware of or directed the municipal policy or custom at issue." Id. Absent identification of one such decisionmaker possessing final authority to establish policy, the plaintiff could not, as a matter of law, be subject to §1983 liability. Id. (explaining that an allegation that the City was "deliberately indifferent to wrongful policies and customs" did not sufficiently identify a policymaker for the purposes of Monell, and noting it was equally untenable to identify such a policymaker in opposition to the City's motion to dismiss when such identification is conspicuously absent in the Complaint). Id.

Monell and its prodigy are clear that only those municipal officials who have final policymaking authority may subject the government to §1983 liability. Id. With regard to Plaintiff's claims against Defendants, municipal liability under §1983 is limited to those circumstances in which the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. The plaintiff must show the municipal action was taken with the requisite degree

of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997).

Applying the requirements identified by the United States District Court for the Middle District of Pennsylvania to the claim pled by Plaintiff in her Complaint, it is clear that Plaintiff fails to establish a prima facie claim under §1983. First, Plaintiff does not identify any "statement of policy" promulgated by "an appropriate office or entity" of Defendants which was allegedly being implemented at the time she was tripped by a minor student. While Plaintiff contends that Defendants exhibited a "custom and practice of exhibiting indifference to health of teachers and aides" and that Defendants "have a custom and practice of failing to alert and warn individuals of student dangers and show deliberate indifference to teachers' and aides' health," it is submitted that this broad generalization is not sufficient to meet the Monell pleading standard which requires the plaintiff show municipal action was taken with the requisite degree of culpability, and demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997).

It is submitted that Plaintiff's vague and conclusory averments pertaining to allegedly unconstitutional polices or custom do not sufficiently form a basis for a prima facie claim under a municipal liability theory under §1983.

Plaintiff's Complaint as a whole supports, at most, a negligent failure to warn the Plaintiff prior to her being tripped by the minor student. A "failure to warn" theory is not sufficient to form a basis for a claim of constitutional violations. See Smith v. Philadelphia Housing Authority, 531 Fed. Appx. 273 (3d Cir. 2013) (holding there is no duty under the substantive component of the

Due Process Clause to provide a safe work environment and that failure to warn about known risks does not rise to the conscience shocking level).

Thus, the Complaint is void of allegations which, even if true, support a claim that Defendants engaged in any actions which violated any constitutional right of the Plaintiff, under any Amendment to the Constitution or §1983. Therefore, it is respectfully submitted that Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## IV.   CONCLUSION

For the aforementioned reasons, Defendants, Downingtown Area School District, Downingtown Area School Authority, and Lionville Middle School, respectfully request that this Honorable Court enter the attached Order, dismissing Plaintiff's Amended Complaint with prejudice.

Respectfully Submitted,

CONNOR, WEBER & OBERLIES

By: *Julia M. Jacobelli*
Julia M. Jacobelli, Esquire
Connor, Weber & Oberlies
171 West Lancaster Avenue
Paoli, PA 19301
(610) 560-0972
(610) 640-1520 – fax
Email: jjacobelli@cwolaw.com
Attorney ID No. 309467

Attorney for Defendants,
Downingtown Area School District,
Downingtown Area School Authority, and
Lionville Middle School

Dated: May 5, 2021